## Porter *vs* Scobie.

ERROR TO THE MONTGOMERY CIRCUIT.

*Execution sales. Mortgaged lands. Rescission.*

CHANCERY.

*Case* 89.

CHIEF JUSTICE EWING delivered the opinion of the Court.

*May* 3.

Case stated.

SCOBIE sold to Porter a tract of 150 acres of land, for $1,000, payable in two instalments, the first in 1840, the second in 1845, with interest from the date, and executed his bond for a conveyance, when the last payment was made.

Judgment was recovered for the first instalment, after it fell due, and Porter filed the bill in this case, injoining the same, alledging a want of title in Scobie, and an inability to convey. Scobie answered, exhibiting his title, and insisting on its validity.

The Circuit Court, on the hearing, dissolved the injunction, and dismissed the bill, with damages and costs, and Porter has appealed to this Court.

The only objection to the title which we deem necessary to notice, is in the conveyance of the Sheriff to Stockton.

In 1825, an execution issued on a replevin bond, against T. D. Owings, John T. Mason, Jr. and Elihu Owings, which had been taken in virtue of an execution, which had issued on a judgment recovered on a note executed by T. D. Owings, as principal, and John Mason, Jr. as surety, and was levied on the land in contest, which was given up by said Mason and Elihu Owings, and other trustees or mortgagees, to whom T. D. Owings had previously conveyed the same, together with numerous other tracts, to indemnify them as his sureties in various liabilities, and among them the debt for which the said execution had issued. The said T. D. Owings had, in said deed of trust or mortgage, "authorized and empowered the said trustees or mortgagees, or any three of them to sell, dispose of and convey any part of the estate, whenever it might become necessary for their safety and protection, or in such cases as they, or either of them might

PORTER
*vs*
SCOBIE.

be liable on account of the said T. D. Owings having failed to pay, on such terms as they or a majority of them may consider most to the interest of all concerned, the proceeds to be appropriated to the discharge of the debts herein intended to be secured, and to no other purpose." The said mortgagees gave up the 150 acres of land in contest, to the Sheriff, and by written power, authorized him to sell the same in satisfaction of the execution, and he levied on, sold and conveyed the same to Stockton.

Mortgagees, where the authority to do so is given in the mortgage, may surrender the lands mortgaged to satisfy the debts to secure which they are bound as surety.

If it be conceded that the mortgagees acting under a mere naked power, unconnected with an interest, could not delegate the power to sell and convey to another; yet they in this case had a deep interest. They were also invested with the legal title, and held the same to secure the payment of the very debt for which the land was sold, among others, and surely had a right to surrender the same to the Sheriff, that the absolute estate might be sold in satisfaction of an execution against the mortgagor, and two of themselves as mortgagees, and especially as all the mortgagees concurred, and no others were interested in the mortgage, whose interests could be effected by this mode of sale. Owings, the mortgagor, might have had just ground of complaint, had his mere equity, incumbered with the mortgage, as it was, been levied on and sold for a debt secured by the mortgage, and such sale would have been illegal, as has been before determined by this Court.

Without such power given by the mortgage, the sureties, who were the mortgagees, may give up, and the Sheriff receive their written surrender to him, under seal, for a sale of their legal estate in the mortgaged land.

But surely he has no right to complain, if a surrender of the incumbrance is made, and the absolute estate sold in satisfaction of his debt.

And surely the mortgagees, independent of the power, had the right to release or surrender their interest to the Sheriff, to be levied on and sold for the debt of the mortgagor. Nor can we doubt the power of the Sheriff to receive the surrender, and make sale and conveyance of the absolute estate, by virtue of his office as Sheriff, and especially if the surrender and authority of the mortgagees to sell, was under their seals. And we understand the Sheriff who sold, as proving from his best recollection, that the power of the mortgagees under which he acted, had scrawls attached th each of their names. Though he in a subsequent part

of his deposition, proves a paper shown him, and which had no scrawl attached, to be a true copy of the original, we do not understand the witness as intending to contradict what he had before stated, but as intending only to communicate the idea, that the body of the paper shown to him was a true copy of the original power. But it may be doubted whether seals or scrawls to their names were necessary to invest the Sheriff with power to convey to a purchaser. The paper without seals amounted to a surrender of their claim, to the Sheriff, and an assent to the sale of the absolute estate. Such written surrender and assent, would under the levy and sale be valid. If the levy and sale was good, it might be insisted on with much plausibility, that the Sheriff had the power, by virtue of his office, to go on and complete the execution, by conveyance of the entire interest sold, and that the mortgagees would be estopped to set up claim to the land sold, either at law or in equity. That they could not assert claim successfully in equity is very clear. And that they might be compelled, in a Court of Equity, to surrender all claim to the purchaser, is equally clear. And whether they would not be estopped at law, from asserting claim, may be well doubted. The Sheriff does not convey as an individual, but as an officer. And though he may not be authorized as an officer to levy on and sell the mortgagees interest without their assent, nor even to sell the mortgagor's mere equity of redemption, subject to the mortgage, for a debt secured by the same, as they might surrender their own property and subject it to the levy and sale, we can see no good reason why they may not by writing surrender their interest as mortgagees, so as to subject the absolute estate to levy and sale, under an execution against the mortgagor and two of themselves as mortgagees. And if by their written assent and surrender, the estate may be subjected to the levy and sale, we can perceive no good reason why the Sheriff, whose duty it is, *ex-officio*, to complete an execution which he has begun, may not convey the title to the purchaser. Be this as it may, we cannot doubt, that when the surrender and power is under seal, as we take

PORTER
*vs*
SCOBIE.

When a judgment is injoined on account of defect of title in the land for which the note in sued on was given and defect is remedied before the hearing, no damages or costs should be given to complainant.

it to be in this case, that he may convey and pass to the purchaser the absolute legal title.

But there is error in the decree to the prejudice of the appellant, in the dissolution of the injunction with damages, and the dismissal of his bill with costs. In the progress of the case, and long after the bill was filed, an incumbrance upon the title was removed, by the relinquishment of the dower of Mrs. Stockton, through whose husband's hands, since deceased, the title had passed during the coverture. There was, therefore, cause for the bill and injunction. The complainant should, therefore, have been decreed his costs, and damages should not have been awarded against him, on the dissolution of the injunction.

The decree of the Circuit Court is reversed, and cause remanded, that the complainant's bill be dismissed, but costs decreed in his favor, and his injunction dissolved without damages.

*Hazlerigg and Apperson* for plaintiff: *Peters* for def't.

---

CHANCERY.

*Case* 90.

*May* 5.

The case stated.